CARL H. OSAKI  4008-0
Attorney At Law, A Law Corporation
Pioneer Plaza, Suite 1510
900 Fort Street
Honolulu, Hawaii  96813
Telephone:  (808) 528-4666

Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC. (incorrectly
named as Hawaii Aviation
Contract Services)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRUCE G. SCHOGGEN, ) | CIVIL NO. 07-00149  SOM/KSC |
| ) | |
| Plaintiff, ) | DEFENDANT HAWAII AVIATION |
| ) | CONTRACT SERVICES, INC.'S |
| vs. ) | MEMORANDUM IN OPPOSITION TO |
| ) | PETITIONER'S MOTION TO |
| ) | CONFIRM ARBITRATION AWARD, |
| HAWAII AVIATION CONTRACT ) | FILED MARCH 20, 2007, AND |
| SERVICES; JAPAN AIRLINES; ) | DEFENDANT HAWAII AVIATION |
| JALWAYS CO., LTD. a ) | CONTRACT SERVICES, INC.'S |
| subsidiary of Japan Airlines; ) | COUNTER-MOTION TO VACATE |
| and DOES 1-10, ) | ARBITRATION AWARD; |
| ) | AFFIDAVIT OF CARL H. OSAKI; |
| Defendants. ) | EXHIBITS "A" THROUGH "D"; |
| ) | CERTIFICATE OF SERVICE |
| ) | |
| ) | DATE:      June 26, 2007 |
| ) | |
| ) | TIME:      9:00 a.m. |
| ) | |
| _____ ) | JUDGE:   Susan Oki Mollway |

DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S
MEMORANDUM IN OPPOSITION TO PETITIONER'S MOTION TO CONFIRM
ARBITRATION AWARD, FILED MARCH 20, 2007,
AND DEFENDANT HAWAII AVIATION CONTRACT SERVICES, INC.'S
COUNTER-MOTION TO VACATE ARBITRATION AWARD

I.   INTRODUCTION

Defendant Hawaii Aviation Contract Services, Inc.
("HACS") opposes Petitioner's Motion To Confirm Arbitration
Award, filed March 20, 2007 ("Motion"), and pursuant to Local
Rule 7.9, counter-moves to vacate the arbitration award on the
grounds of evident partiality and decisions beyond the scope of
the arbitrator's powers.

II.  FACTS

On June 23, 2005, this matter started as a
discrimination dispute.  See Exhibit A.  The initial arbitration
demand set forth claims based on alleged age discrimination,
violation of the Americans with Disabilities Act based on
disability discrimination and perceived disability
discrimination, breach of contract, third-party beneficiary
theory, intentional interference with economic relations,
intentional infliction of emotional distress, and punitive
damages.  Id.

By the time that the arbitration hearing started, the
claim was reduced to a single one based on an alleged breach of
the implied covenant not to prevent performance by a party to a
contract.  See Exhibit B (in setting forth the legal authority
for the claim, Petitioner Bruce Schoggen ("Petitioner") cites to
Whitt v. Godwin, 205 Va. 797, 139 S.E.2d 841 (Va. 1965)).

Prior to the hearing, the relationship between HACS and Japan Air Charter Co., Ltd. and JALways Co., Ltd. (collectively "JAL") was not at issue since it was not disputed that HACS was Petitioner's employer.  This is evident in the fact that no party – not HACS and not Petitioner – proposed to introduce at the arbitration hearing any documentation regarding the nature of the relationship between HACS and JAL.  <u>See</u> Affidavit of Carl H. Osaki.  Such documentation was available because it had been disclosed pursuant to the terms of a stipulated protective order on September 6, 2006, three weeks prior to the arbitration hearing.  <u>Id</u>. Clearly, neither party deemed the relationship between HACS and JAL material or even relevant.

However, during the arbitration hearing, the arbitrator became very interested in that relationship, even though no party even bothered to address this irrelevant topic.  In his independent questioning of Frank Tabata, the former president of HACS, the arbitrator engaged in the following colloquy:

Q:   HACS, you are the president?

A:   I was, yes.

Q:   You were?

A:   Yes.

Q:   Is that completely owned by Japan Airlines or one of their –

A:   No, it's completely privately owned by Alexander Bell, Blackie Bell. JAL has no ownership interest in HACS at all.

<u>See</u> Exhibit C, at 171.

2

The ownership issue of HACS was not relevant to any issue on the merits.  By his leading questioning, the arbitrator revealed his assumption that HACS was owned by JAL.  Since JAL was not a party to the arbitration, the only conceivable reason for the question where the identity of the employer was not at issue, was to explore the source of payment of the award.  This questioning occurred on the first day of the two day arbitration hearing, before all of the evidence was introduced, and no party had referred to any fact that JAL was "standing behind" HACS.

At the end of the hearing, as the closing briefing was being discussed, the arbitrator again independently brought up the relationship between HACS and JAL again:

> ARBITRATOR McCONNEL:    Well, I am a little interested in any potential agency relationship between JAL and HACS.  I don't know if – I didn't see much in the record.
>
> MR. SIMONS:             We do have produced pursuant to a protective order in this case the master contract, and I would like to be able to submit that to you so you can at least see their contractual relationship.

Id., at 246.

The arbitrator's observation about there being a dearth of information about the relationship between HACS and JAL in the record was correct, because it was not relevant to the issues of alleged liability and damages.

Along with his post-hearing brief, Petitioner submitted to the arbitrator the agreements between HACS and JAL.  See Exhibit D (under seal); Osaki Affidavit.  Taking a cue from the

3

arbitrator's questioning, Petitioner introduced a new, irrelevant issue to the proceeding: "If JAL not HACS was the real cause of the problem, then JAL will have to indemnify HACS." <u>See</u> Exhibit D, at 7-8.

JAL was not a party to the arbitration contract. <u>See</u> Motion, at its Exhibit 1. Thus, JAL was not a participant in the arbitration. Indeed, Schoggen had voluntarily dismissed his claims against JAL. <u>See</u> Stipulation To Dismiss With Prejudice Counts I, II, And III Of Plaintiff's Complaint Against Defendants Japan Airlines And JALways Co., Ltd., filed March 26, 2005 (stipulating to dismissal of statutory claims). <u>See also</u> Motion, at its Exhibit 2 (dismissing remainder of Petitioner's claims against JAL). JAL's liability to Petitioner, either directly or indirectly, simply was not at issue in any forum. Therefore, there was no conceivable and proper relevance for the arbitrator to be interested in HACS' relationship with JAL, save for information about where money to pay for damages would ultimately be come from.

## III. <u>ARGUMENTS</u>

Arbitration awards should be vacated in the following circumstances:

     (1)    where the award was procured by corruption, fraud, or undue means;

     (2)    where there was evident partiality or corruption in the arbitrators, or either of them;

     (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of

any other misbehavior by which the rights of any party have been prejudiced; or

(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

A.  The Arbitration Award Should Be Vacated Because The Arbitrator Exceeded His Power, Or So Imperfectly Executed Them That A Mutual Final, And Definite Award Upon The Subject Matter Submitted Was Not Made

The arbitrator in the underlying proceeding, made up his mind about where money was going to go before the hearing was completed, and before all of the evidence had been submitted. This was made abundantly clear when the arbitrator queried Mr. Tabata about whether JAL owned HACS. See Exhibit C, at 171. There simply was no relevant reason to take this side-trip into the financial control of HACS. Why was the arbitrator asking this question, if not to see whether JAL's pocket would be exposed if an award favored Petitioner?

Clearly, the arbitrator was not satisfied with Mr. Tabata's truthful response that HACS was not owned or controlled by JAL, but instead 100% owned and controlled by a life-long resident of Hawaii, Alexander "Blackie" Bell. Indeed, at the end of the hearing, the arbitrator re-visited the issue of "any potential agency relationship between JAL and HACS." Id., at 246. Why was this even relevant? Obviously, it was not or else the record would not have been left so barren on the topic by the litigants. Id. Yet, the arbitrator still persisted in uncovering any financial roads leading back to JAL.

5

Petitioner, understanding the potential beneficial windfall to his case, was all too willing to provide the HACS-JAL Agreements to the arbitrator, even though he himself thought them to be irrelevant up to that point. Id. Petitioner, capitalizing on the arbitrator's evident willingness to excuse an award on the reasoning that JAL would bear the burden of the award, argued that HACS could take advantage of indemnity provisions to essentially shift liability to JAL. See Exhibit D, at 7-8.

All of this occurred beyond the scope of the arbitration agreement between HACS and Petitioner. See Motion, at its Exhibit 1. The arbitration agreement provided that "any dispute between the parties hereto" would be "submitted to the American Arbitration Association." Id. (emphasis added). The parties to the agreement were limited to HACS and Petitioner; JAL was not, and is not, a party. Yet, despite the limited scope of the arbitrable claims, the arbitrator brought a potential dispute between HACS and JAL (through the indemnity provision in the HACS-JAL Agreements) into the arbitration between HACS and Petitioner, and based the award on the pass-through mechanism of the indemnity provision of the HACS-JAL Agreements. This is clearly beyond his powers as an arbitrator of the dispute between HACS and Petitioner, and subjects his award to vacatur. See Holmes v. Orleans Parish School Board, 698 So. 2d 429 (La. Ct. App. 1997).

In Holmes, a coach was suspended by the school board, and arbitrated the matter. The arbitrator reduced the suspension

to a written warning, and all parties moved to vacate.  The

arbitration clause restricted an arbitrator to determining

whether or not there had been violation of the wider collective

bargaining agreement.  Id., 698 So. 2d at 435.  But, the Holmes

court rules that the parties' submission agreement empowered the

arbitrator to address remedial issues of reassignment as a coach

and lost wages.  Id., 698 So. 2d at 436.  The Holmes court,

however, found no authority, either in the arbitration provision

or the arbitration submission, for the arbitrator to address the

remedy of reducing a suspension to a written warning, and vacated

that part of the award.  Id.

The Holmes court noted that arbitration awards are

subject to vacatur when an arbitrator "'base[s] his award on some

body of thought, or feeling, or policy, or law that is outside

the contract.'"  Id., 698 So. 2d at 434.

Here, the arbitration provision limited arbitrable

matters to disputes between Petitioner and HACS.  Nothing

submitted by the parties implicated any possible issue of pass-

through of award amounts to JAL for the arbitrator to decide.

Yet, the arbitrator took it upon himself to explore this issue in

an effort, apparently, to assuage the sting of an adverse award

to HACS.  See id., 698 So. 2d at 434 (vacatur is possible when

the remedy "'is based on general considerations of fairness and

equity rather than on the precise terms of the agreement'").

Let there be no mistake that the arbitrator's

unauthorized exploration into questions of JAL's ultimate

liability played a part in the decision, because there is no
other explanation for the detours from the issues before him.
This situation is analogous to those cases in which arbitration
awards are vacated as a prophylactic measure because of
undisclosed conflicts.  See, e.g., Beebe Medical Center, Inc. v.
Insight Health Services Corp., 751 A.2d 426 (Del. 1999) (non-
disclosure of conflict will dictate vacatur).  Citing
Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S.
145 (1968), a case in which there was absolutely no evidence that
the arbitrator acted unfairly or impartially, the Beebe court
noted:

> "Neither this arbitrator nor the prime contractor gave
> to petitioner even an intimation of the close financial
> relations that had existed between them for a period of
> years.  We have no doubt that if a litigant could show
> that a foreman of a jury or a judge in a court of
> justice had, unknown to the litigant, any such
> relationship, the judgment would be subject to
> challenge. . . It is true that arbitrators cannot sever
> all their ties with the business world, since they are
> not expected to get all their income from their work
> deciding cases, but we should, if anything, be even
> more scrupulous to safeguard the impartiality of
> arbitrators than judges, since the former have
> completely free rein to decide the law as well as the
> facts and are not subject to appellate review."

Beebe, 751 A.2d at 433.

The lesson of Beebe and Commonwealth Coatings is that
when things appear potentially injurious to the integrity of the
arbitration process, an award rendered under such circumstances
is subject to vacatur.  This, despite no evidence that the award
is, in fact, tainted.

8

Here, one is left to wonder how the otherwise irrelevant information about a possible indemnification route available to HACS affected the arbitrator's decision.  It was beyond the arbitrator's scope of authority to address any potential dispute between HACS and JAL, but he did so any way.  Although the arbitrator's award in this matter may not contain the smoking gun evidence that feelings about indemnity and/or ownership by JAL went into the calculus of the award, like the cases of undisclosed conflicts, the danger to the integrity of the arbitration process is too great to allow it to survive.

Another, and further reason, supporting the vacatur of the award here is the axiomatic notion that mentioning "insurance" before a jury typically warrants a mis-trial.  The principle is a hoary one, and the rationale assumed.  But, the purpose for that prophylactic rule is to prevent an irrelevant matter from invading proper consideration of the relevant merits. See McCutcheon v. Leonard, 114 Vt. 38, 41, 39 A.2d 348, 349 (1944)("This court has repeatedly held that it is reversible error to needlessly bring to the attention of the jury the fact that an insurance company is defending the case.  To do so constitutes an appeal to the jury to disregard the evidence in the case and to have their verdict or the amount of it depend upon the fact that no loss would fall upon the defendant but that the damages would be paid by some other agency."); Landry v. Hubert, 100 Vt. 268, 277, 137 A. 97, 101 (1927)("This whole argument [informing the jury that an insurance company was

9

defending the suit] was highly improper.  It was not based upon the evidence in the case or upon any inference to be drawn from the evidence.  It was thinly veiled appeal to the jury to disregard the evidence in the case, and to have their verdict or the amount of it upon the fact that no loss would fall upon the defendant, but that the damages would be paid by some other agency.  Such argument constitutes reversible error."); Bliss v. Moore, 112 Vt. 185, 187, 22 A.2d 315 (1941)("It was immaterial and irrelevant to any issue in the case that the plaintiff had been indemnified in whole or in part for her loss by some third party.").

It was apparent here that the arbitrator was searching to assure himself that JAL's financial resources would bear the burden of the award.  It was improper to launch off on this side trip to irrelevant territory that had nothing whatsoever to do with the dispute between HACS and Petitioner.

At rock bottom, the question that haunts and infects the award in this case is:  What would the award have been like had the inquiry into JAL's possible ownership of HACS, and JAL's possible indemnification of HACS, not been conducted?  The inescapable conclusion is that it would have come out differently; the arbitrator would not have been in a position to give Petitioner his cake and allow HACS to eat it too, all at the expense of JAL.  HACS remains entitled to an arbitration proceeding that is not affected by factors that compel vacatur.

10

IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, HACS respectfully requests this Court to deny the Motion and to grant its counter-motion to vacate (1) Partial Final Award Of Arbitrator, dated November 13, 2006; (2) Second Partial Final Award Of Arbitrator, dated January 10, 2007; and (3) Final Award Of Arbitrator, dated March 5, 2007.  <u>See</u> Osaki Affidavit.

JUN. – 7 2007

DATED:    Honolulu, Hawaii _____.

CARL H. OSAKI
Attorney for Defendant
HAWAII AVIATION CONTRACT
SERVICES, INC.

11